SARAH A. PEASE *vs.* CHARLES LYMAN PARSONS & others.

Franklin.   September 17, 1930. — November 24, 1930.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Trust,* De facto trustee, Trustee's liability in tort.   *Actionable Tort. Equity Jurisdiction,* To enjoin nuisance.   *Baseball.  Nuisance.  Municipal Corporations,* Officers and agents.   *Public Officer.  Damages,* In suit in equity.

A deed conveyed a parcel of land in a town to three trustees, to be used forever as a playground "under the control and management of the trustees for the time being," vacancies among the trustees to be filled by a vote of the town at a town meeting.  The town did not assume control of the playground, nor was any authority exercised over it by any town officer or board under G. L. c. 45.  Upon the death of one of the trustees, the town purported to take action to elect a certain person as his successor.  Such person thereafter "understood" that he was a trustee and assumed to act as such.  He approved the location of a baseball diamond on the playground, permitted the playing of baseball thereon, participated in some of the games and knew that baseballs were driven onto the adjoining property, to the damage thereof, and that the players frequently went onto the adjoining property to recover the balls.  The diamond was so located that it was reasonably to be anticipated that foul balls would be batted upon the adjoining property in the ordinary course of the games.  The other two trustees did not live in the town, had nothing to do with the layout of the diamond and did not know that damage was done or likely to be done to the adjoining property.  In a suit in equity by the owner of the adjoining property against the trustees, a final decree was entered enjoining all the defendants from permitting baseball games to be played on the playground in such a place or manner "that a ball will be likely to be batted or thrown on the adjoining premises of the plaintiff"; and ordering the active trustee to pay damages to plaintiff.  *Held,* that

(1) No liability of the other two defendants to respond in damages appeared;

(2) Even if the town had the right to elect the active trustee, which was not decided, he was not thereby constituted an officer or agent of the town or a public officer, so as not to be liable personally for damages;

(3) Furthermore, having done acts as trustee in control and management of the playground and having personally participated in the use thereof above described, the active trustee was liable for his own negligence;

(4) Even if the deed constituted a valid public charitable trust, the active trustee was liable for his own negligence;

(5) Such use of the playground constituted a nuisance with respect to the plaintiff's property; and, by reason of his acts, the active trustee was guilty of negligence for which he was liable personally;

(6) There was no error in that part of the final decree ordering the active trustee to pay damages;

(7) The final decree was proper in the restraint that it imposed upon the use of the playground.

BILL IN EQUITY, filed in the Superior Court on June 10, 1926, against Charles Parsons, Edward Affhauser and Alexander J. Patterson.

The bill contained allegations that the defendants were owners of land in Conway which they held in trust "to be forever kept open as a public play ground for the use and benefit of all the public school children of Conway, under the control and management of the trustees for the time being"; that they "have consented to, permitted and allowed their said grounds to be used by the public school children of Conway and other . . . persons beyond the age of public school children for the purpose of playing the game of baseball thereon; that baseballs are batted and thrown upon the [adjoining] land of your plaintiff and into her garden, greatly injuring and damaging the same; that baseballs are batted and thrown into and upon her house, erected upon said land, breaking windows therein and otherwise damaging the same; [and] that your defendants consent to, permit and allow the conducting of said play ground to be carried on in such a manner as to greatly injure and damage your plaintiff's property." The plaintiff sought damages and that the defendants "be enjoined from so operating or conducting the play ground as to cause baseballs to fall, or be thrown or batted upon the plaintiff's premises." The bill also contained allegations

that the defendants had a right of way from the playground over the plaintiff's premises; and that the defendants "have used, consented to, permitted and allowed the right of way across the land of your plaintiff to be used . . . [improperly]." The plaintiff also sought to have such improper use of the right of way enjoined.

The defendants demurred. The demurrer was heard by *Irwin,* J., by whose order there were entered an interlocutory decree sustaining it and a final decree dismissing the bill. Upon appeal by the plaintiff, this court, in a decision reported in 259 Mass. 86, decided that the allegations respecting the driving of baseballs upon the plaintiff's land did not entitle her to relief, but that the allegations respecting the improper use of the right. of way set forth a ground of relief; and the final decree was reversed.

The plaintiff thereafter was permitted to amend the bill by adding allegations that "the trust land or premises so owned, controlled and managed by these defendants as trustees is of great area and extent so that a baseball diamond and field could with reasonable care and at reasonable expense have been so laid out and located on said premises that no damage could have been caused to the plaintiff's premises, or be reasonably expected to cause such damage, but the defendants caused and consented that a diamond be located so near to the premises of the plaintiff, as located on said plan, that as a necessary consequence damages must have been suffered by the plaintiff to her said premises and ought to have been expected, anticipated and foreseen by the defendants to result in damages to the plaintiff's premises by reason of baseballs being batted and propelled in and upon the premises of the plaintiff. . . ."

Upon motion by the plaintiff, Charles Lyman Parsons was substituted as the defendant in place of Charles Parsons, deceased. The suit then was referred to a master, material facts found by whom are stated in the opinion. By order of *Lummus,* J., there were entered an interlocutory decree confirming the master's report, and a final decree as follows:

"(1) That the present defendants . . . and each of them,

and his and their servants, agents and assistants, be and hereby are perpetually enjoined and restrained from permitting or continuing to permit, after thirty days from the entry of final decree in this cause, the game of baseball to be played on the playground . . . in such a place or in such a manner that a ball will be likely to be batted or thrown on the adjoining premises of the plaintiff described in the bill;

"(2) That the said present defendants and each of them, and his and their servants, agents and assistants, be and hereby are enjoined and commanded, not later than thirty days after the entry of final decree in this cause, and thenceforth perpetually, to take all reasonable means to prevent the playing of the game of baseball on such play ground in such a place or in such a manner that a ball will be likely to be batted or thrown on said premises of the plaintiff;

"(3) That the defendant Charles Lyman Parsons pay to the plaintiff damages in the sum of $250, together with costs in the sum of $139.65, and that execution issue for such damages and costs."

The defendant Charles Lyman Parsons appealed from the final decree.

*W. A. Davenport,* (*W. L. Davenport* with him,) for the defendant Charles Lyman Parsons.

*C. H. Wright,* (*E. D. Getman* with him,) for the plaintiff.

CARROLL, J. When this suit in equity was before us, *Pease* v. *Parsons,* 259 Mass. 86, the demurrer of the defendants was overruled. The plaintiff has amended her bill and the case was sent to a master.

C. Lyman Parsons, hereafter called the defendant, conveyed to trustees a tract of land in Conway to be used as a public playground. A baseball field was laid out thereon, and the master found that the diamond as located in 1920 was so near the plaintiff's land that a great many balls were driven onto her premises; that the defendant approved this location of the baseball field which was frequently used for baseball games by children and adults, although his approval of the location was before

he became trustee; that the defendant participated, after he became trustee, "in a number of ball games played on the diamond, has umpired a few, and frequently has attended them as a spectator"; that it was always apparent to him that the diamond was so located "that it was reasonably to be anticipated that foul balls would be batted upon the plaintiff's property in the ordinary course of the games, and was a necessary consequence of the layout of the diamond." It was also found that the defendant saw balls batted onto the plaintiff's land and witnessed damage done thereby to her property; that the plaintiff on several occasions complained to the defendant and has requested "that the situation be remedied"; that the defendant at all times has permitted the use of the playground for ball games and has never taken any steps to stop them; that baseballs were driven against the plaintiff's house and barn, damaging them, and quite frequently players would come upon her land to recover the balls batted into her garden; that the plaintiff has been subjected to inconvenience and annoyance and has been deprived of the unrestricted use of her yard and garden and the comfortable enjoyment of her home. It appeared that shortly before the suit was brought fences and wire barriers were erected. These have prevented many balls from going upon the plaintiff's land but "It seems doubtful . . . if the trouble can be entirely remedied" if games are to be played on the diamond as at present located. The inference to be drawn from the findings is that the management and control of the ball field in its location where damage to the plaintiff's land would follow from its use were in the hands of the defendant.

After the death of Charles Parsons, one of the original trustees, the town of Conway, on February 7, 1921, took action purporting to elect the defendant as his successor. The vote of the town was in these words: "It was voted by the town that C. Lyman Parsons be a trustee of the public playgrounds." It was not stated in the warrant for the meeting that this subject was to be acted on.

At the hearing before the master the defendant testified
that he understood he was a trustee. The master found
that he accepted the office and acted as if he were a trustee
and "assumed the duties and liabilities of the office, if as
matter of law he could do so."

There was no appeal from the decree affirming the mas-
ter's report. A final decree was entered enjoining all the
defendants from permitting baseball games to be played
on the playground in such a place or manner "that a
ball will be likely to be batted or thrown on the adjoining
premises of the plaintiff." The decree also ordered the
defendant C. Lyman Parsons to pay to the plaintiff the
damages assessed. He appealed.

A certain right of way was involved in the proceeding,
but the decree is silent on this matter and no argument
is made in reference to it. It is not argued that the part
of the decree ordering Parsons, Affhauser and Patterson
"to take all reasonable means to prevent the playing of
the game of baseball on such playground in such a place
or in such a manner that a ball will be likely to be batted
or thrown on said premises of the plaintiff" is wrong.
The defendant's complaint is that the decree is incorrect
in awarding damages against him and in restraining him
from permitting ball games to be played on the location
in question.

Affhauser, Patterson and one Charles Parsons were the
trustees named in the deed, dated June 1, 1916, in which
the defendant was the grantor. The master found that
when the deed was given all the trustees lived in Conway;
that "Since the day following the giving of the deed the
trustees" have never held a meeting or taken any official
action regarding the diamond; that Affhauser moved from
Conway ten years ago, and Patterson, since 1919, has
ceased to live in Conway; that neither Affhauser nor Pat-
terson had anything to do with laying out the present
diamond, and it did not appear that either of them had
seen a game played thereon or knew that damage was done
or likely to be done to the plaintiff. The plaintiff con-
tends that Affhauser and Patterson should be called upon

to respond in damages. No liability by these parties is shown, and as the plaintiff did not appeal from the decree this point is not open.

The selection of " a trustee of the public playgrounds " was not referred to in the warrant for the town meeting. By G. L. c. 39, § 10, " No action shall be valid unless the subject matter thereof is contained in the warrant." G. L. c. 45, § 14, provides that a town may acquire land and buildings by gift, purchase, eminent domain or may lease the same or may use land or buildings already owned by it for the purpose of a public playground, " . . . the powers conferred by this section shall be exercised by the board of park commissioners, or by the school committee, or by a playground or recreation commission . . . elected by the voters of the town at a town meeting, or may be distributed between the board of park commissioners, the school committee and such playground or recreation commission, or any two of them, or they may be exercised by a committee made up from any one or more members of all or any one of said boards or commissions . . . as the . . . town may decide. Any municipal officer or board authorized to exercise any of the powers conferred by this section may conduct its activities . . . on private property, with the consent of the owners."

It does not appear that the town acted under this section of the statute. The land did not belong to the town; the title was originally in Affhauser, Patterson and Charles Parsons, trustees, "'their heirs, successors and assigns, in trust. . . . To be forever kept open as a public play ground . . . under the control and management of the trustees for the time being. . . . In case of a vacancy in said trustees, the same shall be filled at the next ensuing annual town meeting, by vote of the inhabitants of the town, legally qualified to vote in town affairs." It does not appear that the town assumed the control or management of the playground. All that was done by the town was to pass the vote that the defendant " be a trustee of the public playgrounds." It is not shown that any board authorized under the statute or any municipal officer with

authority "to exercise any of the powers conferred by this section " conducted activities on private property with the consent of the owner; and no board or officer designated in the statute was elected.

It is our opinion, therefore, that the defendant was not an officer or agent of the town. He was acting in his capacity as a trustee of the land conveyed and was a trustee in fact. If the town had the right to elect him " a trustee of the public playgrounds," and we do not decide that it did, this, in all the circumstances, would not constitute him a public officer. But he understood he was a trustee, he acted as such, he assumed all the duties and liabilities of the office, as far as it was possible for him to do so. He participated in some of the games, and umpired some of them. He " at all times has permitted the use of the playground for ball games, and has never interfered with them or taken any steps to prevent them." Under the deed of trust the playground was " under the control and management of the trustees." As he was acting as trustee, controlling and managing the playground, participating in the games and permitting the wrongful use of the playground, he is liable for his own negligence. *Pease* v. *Parsons, supra.* Even if it be assumed that the deed of trust for a playground was a good public charitable trust, see *Bartlett, petitioner,* 163 Mass. 509, 514, this does not relieve the defendant of responsibility for his own personal misfeasance. It was held in *Moynihan* v. *Todd,* 188 Mass. 301, with a full citation of authorities, that a superintendent of streets was liable for his personal acts of misfeasance in the performance of a public work. In *Barry* v. *Smith,* 191 Mass. 78, it was said at page 89 that " If the defendants [who were the board of health of Everett] were personally negligent in the maintenance of the hospital and in consequence of that negligence the hospital became a nuisance to the plaintiff's adjoining houses and land, the defendants would seem to be liable within the rule of *Moynihan* v. *Todd.*" See *Farrigan* v. *Pevear,* 193 Mass. 147, 150, 151.

This principle is applicable here. The defendant, act-

ing as he did, was personally negligent in the management and control of the playground, and its maintenance, to such an extent that it became a nuisance to the plaintiff's adjoining land, and for this personal misfeasance he was liable. The fact that the trust was a charitable one does not excuse him for his own personal misfeasance. There was no error in restraining the defendant from permitting ball games to be played in such place or manner as to cause damage to the plaintiff's property.

The defendant relies on *Harrington* v. *Border City Manuf. Co.* 240 Mass. 170. The case is to be distinguished. It could not have been inferred in that case that a person would be struck by a stray ball coming from the field. Here the defendant knew of the damage likely to occur and at times participated in the ball games. The decree was right in restraining the use of the ball field and in awarding damages.

*Decree affirmed with costs.*