### Northern District

### No. 5004

## AUGUSTINE ELIA

### v.

## MERRIMAC VALLEY GOLF CLUB

(December 11, 1956)

*Brooks, J.* This is an action of tort to recover damages resulting from bodily injury to plaintiff

when hit by a golf ball. The declaration is in two counts. Count one alleges negligence in permitting a golf ball, played on defendant's golf course, to come onto plaintiff's land and injure plaintiff. Count two alleges that defendant maintained a nuisance by inviting and permitting persons to play golf on its premises adjacent to plaintiff's property without erecting safeguards to prevent golf balls from coming onto plaintiff's premises and injuring plaintiff, as should have been foreseen. Defendant answered by general denial and plea of contributory negligence.

*The evidence disclosed the following.* Plaintiff owned a parcel of land on the south side of Pond Street, a roadway twenty feet wide in the town of Methuen. Subsequent to plaintiff's acquisition of his land, defendant had acquired a parcel of land on the north side of Pond Street and adjacent thereto, which it made into and had operated for many years as a golf course. Fairway No. 13 ran east along said road 400 yards from tee to green, parallel to and opposite plaintiff's land. The only barrier between the fairway and plaintiff's land was a barbed wire fence three to four feet high and elm trees thirty to forty feet apart, also thick bushes, all upon defendant's property. The bushes and trees were from ten to thirty feet high. The distance from the fence and trees to where plaintiff was injured while working in his garden was thirty-five feet.

Persons satisfactory to defendant were allowed to purchase membership in defendant's golf course. Members of the public were also permitted to play on a payment of a fee. Trespassers were occasionally found on defendant's course. On July 6, 1954, defendant had 250 members who were entitled to play golf at their convenience on defendant's course. The transients who played for a daily green fee had to register before playing and on July 6, forty or more of them were using the golf course after 5 p.m.

Plaintiff was working in his garden about 6:30 p.m. on that day when struck by the golf ball.

It was testified that two good shots are required to reach the green from the tee on the 13th hole and that more than two strokes are frequently played by the average golfer. It was further testified that it is an ordinary incident of golfing to slice, which means that the ball deviates to the right or left according to whether the player is right or left-handed. Sometimes a player slices a ball as much as forty-five degrees from the straight line. More than 50% of the golfers who play on defendant's course cannot hit the ball straight at all times. While it is not ordinary to slice a ball, this may be anticipated.

It was testified that it would be possible but not practicable to string a meshed wire barrier at the south edge of the fairway. A fifteen-foot meshed wire barrier had been erected to protect golfers on the 14th tee adjacent to the 13th fairway.

Plaintiff testified that prior to 1952 he found five or six golf balls a year on his land, that in 1952 he found fifteen or twenty golf balls on his land, that in 1953 and 1954 he found twenty to twenty-five golf balls per season on his land and that in 1954, from April to July 6, he found about fifteen to twenty balls on his land, five or six of which he actually saw land. Defendant's golf course is the only course in the vicinity of plaintiff's land.

At the close of the trial, plaintiff filed the following requests for rulings (citations of law omitted):

1. The evidence warrants a finding for the plaintiff on Count 1.
2. The evidence warrants a finding for the plaintiff on Count 2.
3. The general rule of law applicable to the evidence before the Court is that the person, who for his own purposes brings on his land and collects and keeps there anything likely to do mischief if it escapes, must keep it in at his peril; and if he does not do so, is prima facie answerable for all the damage which is the natural consequence of its escape.

4. The defendant had the duty to keep its land and the playing of golf thereon in such a state that the plaintiff, its neighbor, may not be injured by a golf ball played on defendant's golf course and falling upon plaintiff's land.

5. One who for his own purposes brings upon his land noxious substances or other things which have a tendency to escape and do great damage, is bound at his peril to confine them and keep them on his own premises.

6. In the use of its land as a golf course the defendant was under a legal obligation to take every possible precaution absolutely to prevent injury therefrom to the plaintiff upon his own adjoining land.

7. The evidence is legally sufficient to permit the court to find that the defendant knew or should have known that a golf ball played from its golf course would be likely to stray to the plaintiff's premises and strike a person there.

8. The inherent nature of the game of golf is such as to require the defendant to take reasonable precautions for the protection of the plaintiff upon his adjoining land.

9. A possessor of land is subject to liability for bodily harm to others outside the land caused by an activity carried on by him thereon which he realizes or should realize as involving an unreasonable risk of bodily harm to them under the same conditions as though the activity were carried on at a neutral place.

10. A golf ball is a very dangerous missile and the element of danger attached to it, though not intrinsic in the game itself, is, nevertheless, present and the defendant was under a duty to protect the plaintiff from this danger.

The court made the following rulings:

"The plaintiff's request for rulings are disposed of as follows:— Requests 1, 2 and 7 denied — see my findings of fact. Requests 3, 4, 5, 6, 8, 9, and 10 are allowed as abstract statements of law but are inapplicable to the facts which I have found. See my findings of fact." The court found for defendant and filed findings of fact essentially as set forth above and concluding as follows:

"In view of the fact that no evidence was introduced before the court to show from whence said golf ball actually came or by what means, how or by whom said golf ball was propelled upon the land of the plaintiff, nor that the golf ball that struck said plaintiff was at the time of the accident under the management or control of the defendant or its agents, servants or licensees, the court finds for the defendant on count one of the declaration.

"There is evidence introduced before me that the said plaintiff had, previous to July 6, 1954, from time to time, gathered golf balls on his land but there was no evidence introduced before me as to whence said golf balls came upon the plaintiff's land or by what means, how or by whose act the same came upon his land. I therefore find for the defendant on count two of the declaration."

The plaintiff claimed to be aggrieved by the rulings on requests Nos. 1, 2 and 7 and by the ruling that requests Nos. 3, 4, 5, 6, 8, 9 and 10 are allowed as abstract statements of law but are inapplicable to the facts found.

The fundamental issue in this case is whether the court was in error in holding that there was no evidence of defendant's connection with plaintiff's injury. The disposition of all plaintiff's requests for rulings are based on the premise that there was no such evidence. That is clear from the court's concluding statement previously set forth, its denial of requests Nos. 1, 2 and 7, and its allowance of requests Nos. 3, 4, 5, 6, 8, 9, 10, accompanied by the reference to the court's "findings of fact."

If the court's premise was wrong and there was evidence that the golf ball which struck plaintiff had been hit by a person authorized to play the defendant's course, then its disposition of all the requests for rulings was wrong since the court on that evidence could have found defendant negligent and

liable for maintaining a nuisance under the declaration. It may be inferred from the disposition of requests Nos. 3, 4, 5, 6, 8, 9, 10 that had the court found such evidence, it might have found for plaintiff depending on the weight which it gave to that evidence. Had he done so, it would have been on sound ground.

The theory of law underlying this type of liability goes back to the well-known case of *Fletcher v. Rylands*, 1868, 3 House of Lords (Eng.) 330, where a reservoir burst its bounds and water percolated into plaintiff's adjoining mine. In finding defendant liable, Lord Cranmore said "If a person brings or accumulates on his land anything which, if it should escape, may cause damage to his neighbor, he does so at his peril. If it does escape and cause damage, he is responsible, however careful he may have been and whatever precautions he may have taken to prevent the damage." This language has been quoted and the analogy applied in numerous cases where some substance or article has come from defendant's premises onto other property and caused injury.

A later development of this doctrine is its application in cases where a person is hit by a baseball batted out of a play area under circumstances where the accident might reasonably have been anticipated. *Pease v. Parsons*, 273 Mass. 111, 119. *Hennessy v. Boston*, 265 Mass. 559, 561. No Massachusetts case involving a golf ball causing injury to someone off the golf course has been called to our attention. However, 16 A.L.R. 2nd, 1458 has this to say: "In general, it may be said that the courts have adopted similar rules with respect to injuries on adjoining lands from baseballs, golf balls or cricket balls. The rule seems to be that although none of these games are nuisances per se, making an owner or operator an insurer of the safety of persons on adjoining land, the inherent nature of the games requires that reasonable precautions be taken for the protection of such persons

and if it is shown that harm ought to have been foreseen, either through past experience or by reason of inadequate fences or dangerous locations, the owner or operator will be held liable either on the theory of negligence or on the theory that a public nuisance has been created by the dangerous condition."

There are two cases in other jurisdictions precisely in point except that plaintiff there was on the public highway instead of on his own property, an immaterial difference. *Gleason v. Hillcrest Golf Course*, 265 NYS 886, 894, 895, holds that where a golfer has sliced his ball off the fairway onto a highway paralleling the fairway and the ball strikes the windshield of an automobile, injuring the plaintiff, he can recover against the golf club. The court says, "As a general proposition every use by one of his property which violates the rights of another in an essential degree is a nuisance and actionable as such. A nuisance does not rest upon the degree of care used but on the degree of danger existing even with the best of care." . . . "Failure to abate danger which reasonable care would have revealed will charge the club with liability." . . . "The basis of liability is the same whether the form of action be for nuisance or negligence."

In *Castle v. St. Augustine Links*, 38 Times L.R. (Eng.) 615, it was held that the driver of the taxicab could recover against the defendant's club on the theory that a particular portion of the grounds was a public nuisance under the condition and in the place where it was situated. The court said that the club was under a duty to eliminate the danger to persons upon the highway which could be done in various ways, as by having fewer holes or omitting the objectionable holes or placing the hole in a different way. The foregoing cases were cited in *Westborough Country Club v. Palmer*, 204 F2d 143.

In other words, the law appears to support plaintiff's claim of actionable negligence provided there is evidence causally connecting defendant with plaintiff's injury and provided the court finds that the accident could reasonably have been foreseen. The trial court here did not get to the second point because it found adversely to plaintiff on the first point, namely that there was no evidence connecting defendant causally with plaintiff's injury. We now address ourselves to that point.

As previously stated, if the court was wrong in its holding that there was no evidence to connect the golf ball which struck plaintiff with the defendant, the disposition of plaintiff's requests for rulings was wrong. We think the court was wrong. It is true that there is no direct evidence whence the golf ball came or who hit it. There was, however, circumstantial evidence and circumstantial evidence has properly been used to convict and send to prison or death many a defendant. *C. v. Webster,* 5 Cush. 295. *C. v. Tucker,* 189 Mass. 457.

The circumstantial evidence here consists of the fact that plaintiff, when struck by the golf ball, was standing thirty-five feet from the edge of the golf course where it may reasonably be assumed persons were playing golf. It was toward the end of a summer afternoon when forty so-called transient players had registered to play the course after 5 p.m. that day, not counting the regular members of whom 250 were entitled to play and some of whom presumably were also playing that afternoon.

There is evidence that plaintiff had in the past found many golf balls on his property and that in approximately nine weeks prior to July 6, he had picked up fifteen to twenty golf balls on his premises, five or six of which he had actually seen land. There was no other golf course in the vicinity. Now golf balls do not come from outer space, nor do they drop

"like the gentle rain from heaven upon the place beneath." True, some mischievous person might have thrown the golf ball at the plaintiff, causing injury. Some trespassing golfer might have sliced his ball or deliberately driven his ball onto his property and injured him. Some person unconnected with the defendant might have come onto plaintiff's land from time to time and dropped all the golf balls plaintiff testified he picked up.

But what are the probabilities of the situation, — for it is probabilities that we are interested in? A finding of negligence cannot be based on pure conjecture. *McGee v. Boston El. Ry.*, 187 Mass. 569, 570. On the other hand, plaintiff does not have to point out the exact manner in which an accident occurred. *McNicholas v. N. E. Tel. & Tel. Co.*, 196 Mass. 138. Putting it another way, plaintiff does not have to exclude all other possibilities. *Navien v. Cohen*, 268 Mass. 427, 431.

Clearly, the most probable explanation of the flight of this golf ball and of the other golf balls picked up by plaintiff at different times was that they were played by persons on the 13th fairway. Probably, also, those persons had a right to play on the golf course. Whether this circumstantial evidence is weak or strong, it nevertheless is evidence in the case. It was introduced before the court and it is error to rule that there was no evidence.

The court being in error in its findings above quoted and consequently in its disposition of the requests for rulings, judgment is to be vacated. There being no direct finding on the question of negligence, the case is to be remanded for a new trial.

John A. McNiff, for the plaintiff.

Thomas D. Dolan, for the defendant.