Senator Allen Gordon 105 South Moose Morrilton, AR 72110
Dear Senator Gordon:
This letter is in response to your request for an official opinion on the following questions:
 1. Under what circumstances is a Director of a non-profit corporation personally liable for action taken by the Board?
 2. Under what circumstances is a Director of a non-profit corporation personally liable for failure to act?
 3. Does it make a difference if the purpose of the non-profit corporation is charitable, and if so, would a youth service provider non-profit corporation qualify as charitable, and under what circumstances would other non-profit corporations qualify as charitable?
 4. Under what circumstances would a Director of a non-profit/charitable corporation be personally liable for the acts or omissions of staff and employees?
In response to your first question, the liability of a Director of a non-profit corporation is governed by the same rules applicable to a Director of a "for profit" corporation. Generally, if a Director is elected to the Board but is not notified and does not accept his election nor participate in relevant meetings, he will not be liable for the Board's action. See Bank of Commerce v Goolsby, 129 Ark. 416, 196 S.W. 803, 812 (1917); Bank of Des Arc v. Moody, 110 Ark. 39, 161 S.W. 134 (1913). However, the fact that a Director did not attend meetings as often as other members and therefore did not know of action taken by the Board, in the absence of some good cause shown, will not absolve him of liability. Id.
Your second question focuses on the Director's failure to act. There are various forms of negligent failure to act, usually relating to peculiarly dangerous or hazardous conditions or activities. 90 A.L.R.3d 918 (1979). If the failure to act constitutes a failure to exercise reasonable care and diligence, then the Director will be liable for the consequences. 25 A.L.R. 3d 951 (1969). The standard of care in Arkansas is that degree of care which a reasonably prudent man would have exercised under similar circumstances. Hi-Pro Fish Products, Inc. v. McClure,224 F. Supp. 485 (E.D.Ark. 1963). The determination of liability will of course ultimately depend upon the particular facts and circumstances of each case.
Your third question assumes that the non-profit corporation has a charitable purpose. There is a dearth of authority in Arkansas with respect to the potential personal liability of a Director of a charitable institution. In LeMay v. Trinity Lutheran Church,248 Ark. 119, 450 S.W.2d 297 (1970), the plaintiff named the Chairman of the Board of Trustees as a defendant, complaining of damage to her home caused by a tree located on the defendant Church's property. Plaintiff alleged that notice had been given of the dangerous condition. The reported decision does not specify to whom notice was allegedly given. The Church was a charitable institution and the defendant Chairman of the Board of Trustees successfully argued that he was immune from liability, having been sued in his representative capacity.
The difficulty arises in determining the proposition for which this case stands. The ruling, applied to a Director, seems to indicate that the Director will not be personally liable for failure to act when he is sued in his representative capacity. It also seems logical to conclude from this that a Director will not be personally liable for action taken by the Board in its official capacity.
However, the Western District of Arkansas stated, in dictum, in Michael v. St. Paul Mercury Indemnity Co., 92 F. Supp. 140, 142
(1950) that trustees of a charitable institution are "personally answerable for their own torts." And in at least one other jurisdiction adhering to the doctrine of charitable immunity, trustees have been held liable for their personal misfeasance. The Massachusetts Supreme Court in Pease v. Parsons,273 Mass. 111, 173 N.E. 406 (1930), found the defendant trustee personally liable for the negligent management and control of property which was held in a charitable trust. The Court stated that the management and control of the property were in the hands of the trustee, and that he negligently permitted the property's wrongful use. (Massachusetts has since abolished the charitable immunity doctrine, but it was in effect when this case was decided.)
There is, of course, a difference between trustees and directors, and the applicable degree of care should be noted in this regard. While a trustee is ordinarily held to a high standard of care and will often be held liable for simple negligence, a corporate director may only be subject to liability for "gross negligence" or otherwise must at least be guilty of more than mere mistakes of judgment. 1 Hornstein Corporation Law and Practice 446 (1959); Ballantine, Corporations 63(a) (rev. ed. 1946). Yet the foregoing cases do indicate that given an appropriate set of facts an Arkansas court may be reluctant to extend the charitable institution's immunity to a Director. Indeed, this is consistent with the modern trend to require directors of charitable institutions to exercise ordinary and reasonable care. Stern v. Hayes, 381 F. Supp. 1003 (D.D.C. 1974).
Finally, it should be noted that holding a Director personally liable would not appear to be contrary to the theory supporting charitable immunity in Arkansas. This theory is based upon the notion that the property of a charitable organization constitutes a trust which is not subject to depletion by the payment of a judgment for the tort of an officer, agent, employee, or trustee. See Fordyce McKee v. Woman's Christian National Library Ass'n,79 Ark. 550 96 S.W. 155 (1906). It becomes apparent that a Director's personal liability for his own acts would not violate this trust fund theory of immunity.
Your third question also involves the issue of a non-profit corporation's qualification as "charitable." It is difficult to determine, given the absence of specific facts, whether the youth service provider in question qualifies as such. A Boys Club and the YMCA have been deemed charitable institutions. Cabbiness v. City of North Little Rock, 228 Ark. 356, 307 S.W.2d 529 (1957); Collyard v. American Home Assurance Co., 271 Ark. 228, 607 S.W.2d 666
(1980). And an organization whose purpose was to provide rehabilitation, housing and medical care for, among others, youth would apparently have been considered charitable had it been maintained for its stated purposes. J. W. Resort, Inc. v. First Am. Nat. Bank, 3 Ark. App. 290, 625 S.W.2d 557 (1981). The Court found in that instance however that "in its five years of life (J. W. Resort, Inc.) has not supplied any of the services for which it was ostensibly created, and its services of any description have been minimal." Id. at 558.
To the extent Community Services falls into these categories and continuously supplies its services, it would likely qualify as a charitable institution.
Ark. Stat. Ann. 64-1608 (Repl. 1980) defines a "charitable organization" as ". . . any benevolent, philanthropic, patriotic, or eleemosynary person or one purporting to be such." This definition appears in the context of an Act regulating the solicitation of contributions. Arkansas cases defining a charitable institution for purposes of tort immunity are also helpful. Several factors emerge from the cases, including: whether the articles of incorporation provide that the purpose of the corporation is charitable; whether it is maintained for the private gain, profit or advantage of its organizers, officers or owners either directly or indirectly; whether it has capital stock or provisions for distributing dividends or making a profit; whether it derives its funds from public and private charity as well as those who are able to pay; whether all `profits' go toward maintaining the institution and extending and enlarging its charity; whether its doors are open to all who are not pecuniarily able; whether it is exempt from payment of both state and federal taxes. Marion Hospital Association v. Lanphier, 15 Ark. App. 14,688 S.W.2d 322, 324 (1985). See also Helton v. Sisters of Mercy,234 Ark. 76, 351 S.W.2d 129 (1961); Williams v. Jefferson Hospital, 246 Ark. 1231, 442 S.W.2d 243 (1969). It is clear that the organization must be maintained EXCLUSIVELY for charitable purposes. 625 S.W.2d at 558; Crossett Health Center v. Croswell,221 Ark. 874, 256 S.W.2d 548, 552 (1953). The question is, ultimately, one of fact, and has been identified by the Supreme Court as follows:
 Is every organization that is created by proceedings appropriate to bring it, prima facie, within the purview of a benevolent entity for incorporation purposes a charitable institution in fact, intended for the public good to the exclusion of private interests, however meritorious such private ends may be? Id.
It should also be noted that while the Arkansas courts have consistently refused to overturn the rule of immunity for charitable organizations, they have indicated that the doctrine will not be applied in a broad and liberal manner, and that the term "charitable immunity" will be narrowly construed.625 S.W.2d at 558; 442 S.W.2d at 244.
In response to your final question, a Director as a general rule will not merely as a result of his standing be liable for the torts of corporate employees. 90 A.L.R.3d 918 (1979). This principle was affirmed by the Arkansas Supreme Court in LeMay v. Trinity Lutheran Church, supra. However, despite the absence of Arkansas case law directly on point, it is reasonable to predict that a Director of a charitable institution may be held personally liable if he in some way participated in or directed the tortious act. See discussion, supra; Michael v. St. Paul Mercury Indemnity Co., supra; 90 A.L.R.3d 918 (1979)
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.