CAGLE *v.* GLADDEN-DRIGGERS COMPANY.

5-163                                         261 S. W. 2d 536

Opinion delivered October 26, 1953.

*Lookadoo & Lookadoo* and *J. Hugh Lookadoo, Jr.,* for appellant.

*Leffel Gentry,* for appellee.

GRIFFIN SMITH, Chief Justice. Appellee has the Pontiac automobile agency at Arkadelphia and also buys and sells used cars. For this operation a lot separate from the primary business location is used. In the summer of 1950 Cagle was employed as a salesman and assigned to the used car division. He had worked 47 days when the accident giving rise to this claim under the Workmen's Compensation Act occurred. The commission found that at the time of injury Cagle was not engaged in a mission related to his employment and rejected the claim. Circuit court affirmed, and so do we.

Cagle's employment called for a guaranteed salary of $200 per month. If commissions at 5% with a $60 limit on each car sold amounted to more than $200, he would be compensated accordingly. Permission was given Cagle to keep his own car on the lot and to sell it there or elsewhere if an advantageous offer should be made, but in that event the Gladden-Driggers Company was to be paid $25 to compensate the time presumptively lost to the employer.

On the morning of Sept. 21, 1950, Cagle took his Dodge pickup truck to Hot Springs where it was traded for a Chevrolet. Charles Gladden of the Pontiac company testified that Cagle procured permission to make the trip, Gladden's understanding being that Cagle would be back by one o'clock. Instead, he drove to Arkadelphia in the Chevrolet, then went by the appellee's place of business without stopping, and started for Texarkana. He had bought a bottle of whiskey in Hot Springs and had taken two small drinks. Before going to Hot Springs Cagle talked with Mrs. Mattie Fuller in the Caddo Hotel in Arkadelphia. Mrs. Fuller spoke of her intention to go to Texarkana that afternoon and Cagle proposed taking her in the event he should complete the deal in Hot Springs and secure the Chevrolet. Mrs. Fuller had business at Gurdon and preceded Cagle, but during the afternoon he ascertained that she was on the bus and trailed it for a short distance. Mrs. Fuller got out of the bus and joined Cagle, and the two had reached a point be-

tween Hope and Texarkana when the accident causing appellant's injuries occurred.

There was testimony that Cagle "must have been" driving between 60 and 70 miles an hour and that he was drinking. A highway patrolman testified that he met Cagle, who forced him off the highway. By the time the officer had turned his car to follow Cagle had driven off the highway onto the road shoulder, and in attempting to regain his position he struck a highway department truck, then veered into another truck. The Chevrolet, according to one witness, proceeded 150 feet after striking the second truck and came to a stop after reversing its direction.

Witnesses testifying in behalf of Cagle said that they did not smell liquor. Others thought he was drinking. The inference is clear that these witnesses believed he was under the influence of liquor. The commission, however, chose to base its findings upon the purely personal nature of Cagle's activities when the misfortune occurred.

The rule of general application is that when conflicting evidence is before the commission and a finding for or against the claimant is made on a factual issue, that determination will not be disturbed unless, as a matter of law, it is shown that the evidence upon which the administrative agency acted was without substance.

Affirmed.