Mason *v.* Lauck.

5-2263                                    340 S. W. 2d 575

Opinion delivered December 12, 1960.

*Langston & Walker* and *L. A. Hardin,* for appellant.

*Wright, Lindsey, Jennings, Lester* and *Shults,* for appellee.

PAUL WARD, Associate Justice. This is a Workmen's Compensation case. Romie L. Mason was killed in a car accident on Tuesday, January 20, 1959, at about 10:30 p.m. A claim for benefits for his widow, Dorothy V. Mason, and their infant daughter was disallowed by the referee and the full Commission. An appeal was taken to the Circuit Court. After said appeal had been taken claimants filed a Motion before the Commission asking it to reopen the case for the purpose of introducing newly discovered evidence. This Motion was denied by the Commission on the ground that it had lost jurisdiction. Then the claimants filed a petition for Certiorari in the Circuit Court to have the proceedings on the Motion (before the Commission) brought up. This was granted by the Circuit Court. Also, claimants filed a Motion in the Circuit Court asking it to remand the case to the Commission for the purpose of considering the newly discovered evidence. This Motion was denied by the Circuit Court on the ground that it had no authority to remand the case to the Commission for said purpose.

Under the above state of the record the trial court then proceeded to review the findings of the Commission (disregarding the proceedings relative to the newly discovered evidence) and affirmed the same. Claimants now prosecute this appeal.

For the purpose of clarity we will hereafter treat the proceedings as if two appeals were involved. The first appeal refers to the original proceedings before the Commission, its original finding, the appeal to the Circuit Court, and its finding thereon. The second appeal refers to all proceedings relative to the newly discovered evidence.

*FIRST APPEAL.* Romie L. Mason was an employee of the Lauck Provision Company, located at 717 East Washington Street in North Little Rock. James L. Lauck is the owner and manager of said Company. The Company is engaged in the business of selling and servicing freezers to patrons in the State of Arkansas. It was the duty of Romie L. Mason to service these freezers when occasion arose. Some 75 such freezers were located in the Conway territory, which extended along Highway 65 leading from North Little Rock to Conway. The Company furnished Mason a panel truck which he used in connection with his duties. Mason was paid by the week and was subject to call at any time his services were needed whether day or night. Mason kept the truck at his residence when he was not using it.

On the morning of the day Mason was killed he left his home at the usual time and reported for duty at the office of the Company. Shortly thereafter Mr. Lauck asked him to go to his home and service his personal freezer. After completing this task Mason left Lauck's home at approximately 1:30 p.m. He next appeared at about 3 p.m. at the Levy Cafe, which is located a mile or so west of North Little Rock on Highway 65. This cafe at that time was owned by "Dick" Page and his wife Mildred Page (after that and previous to the hearings Mrs. Page married a Mr. Humphreys.) While at the Levy Cafe Mason drank some beer and played shuffleboard with Mr. Page. Later at about 4:30 p.m. Mr. Page left for the purpose of going to "Dick's Place", which is a cafe owned by him and located approximately 5 miles further west on said Highway 65. Approximately 30 minutes after Dick Page left the Levy Cafe Mason also left, and he arrived at Dick's Place at approximately 5:30 o'clock. Mason drank two or three beers with friends at Dick's Place and remained there (with one exception noted later) until about 9:45 or 10 o'clock. It appears from the evidence that while at Dick's Place Mason left somewhere around 7 o'clock and stayed for about 30 minutes then came back. After leaving Dick's Place Mason apparently started to return

home on Highway 65 when he had a collision with another car and was killed at about 10:30 p.m.

It appears from the record that the Company keeps a call-book in which are placed the names of people who call in for repair service on their freezers. This book contained a call from two people in the Conway territory. It was not shown however that Mason was cognizant of these two calls. The record further discloses that these two persons were not contacted by Mason on the afternoon or night of the day he was killed, although they were at home during that time. It further appears that Mason had told a friend earlier in the afternoon that he was to make a service call in the Conway territory that day.

The pivotal question presented to the Commission was whether Mason's death arose "out of and in the course of his employment". It is appellants' strong contention that the facts and circumstances of this case bring it squarely within a well recognized exception to the going and coming rule often referred to in decisions by this court and particularly in the case of *Blankenship Logging Company* v. *Brown*, 212 Ark. 871, 208 S. W. 2d 778. In that case the court recognized "the general rule to the effect that injuries sustained by employees going to and returning from the regular place of employment are not deemed to arise out of and in the course of employment." In that case the court further stated: "The authorities generally recognize several exceptions to the general rule. One of these exceptions, which is as well established as the rule itself, is stated by the Washington Court in the case of *Venho* v. *Ostrander Railway and Timber Company*, 185 Wash. 138, 52 P. 2d 1267, 1268, as follows: 'When a workman is so injured, while being transported in a vehicle furnished by his employer as an incident of the employment, he is within the course of his employment, as contemplated by the act.' " In the case under consideration it is not denied that the Company furnished Mason the truck which he used in servicing the freezers in the Conway territory.

In support of the above contention appellants also rely upon the decisions of this court in *American Casualty Company* v. *Jones*, 224 Ark. 731, 276 S. W. 2d 41; *Frank Lyon Company* v. *Oats*, 225 Ark. 682, 284 S. W. 2d 637, and; *Hunter* v. *Summerville*, 205 Ark. 463, 169 S. W. 2d 579.

It would appear therefore that Mason's death arose out of and in the course of his employment *if*, on the afternoon or night of January 20, 1959, he was engaged in business for his employer. On the other hand, *if* Mason was engaged in activities for his own personal pleasure or profit appellants' claim is not compensable. See: *Fox Brothers Hardware Company* v. *Ryland*, 206 Ark. 680, 177 S. W. 2d 44, and *Cagle* v. *Gladden-Driggers Company*, 222 Ark. 517, 261 S. W. 2d 536. In the latter case this court in affirming the lower court stated: "The commission, however, chose to base its findings upon the purely personal nature of Cagle's activities when the misfortune occurred."

Thus in this kind of cases, as in the case under consideration, a question of fact is presented for the Commission's determination. In testing the Commission's finding on this question of fact, we must give it the force and effect of a jury verdict. See: *Johnson Auto Co.* v. *Kelly*, 228 Ark. 364, 307 S. W. 2d 867, and *Hobbs-Western Co.* v. *Craig*, 209 Ark. 630, 192 S. W. 2d 116. Therefore the finding of the Commission in this instance must be sustained by us if we find it is supported by substantial evidence. If the "first appeal" were all that was involved on this appeal we would be compelled to uphold the findings of the Commission and the Circuit Court because we are convinced they are supported by substantial evidence. However, because of the conclusions reached hereafter on what we have chosen to call the "second appeal," we make no final disposition of the cause at this time.

*SECOND APPEAL.* When appellants presented the Motion to the Commission to reopen the case for the introduction of newly discovered evidence, they attached

to the Motion an affidavit of one Loyce W. Talley, wherein it was indicated he would testify to certain facts. We do not set out the contents of the affidavit because we do not try a case of this kind *de novo*.

It is appellants' belief and contention however that this purported new evidence would result in the Commission reversing its original finding.

We hold that the Commission was correct in refusing to reopen the case on the ground that it lost jurisdiction when the case was appealed to the Circuit Court. We have concluded however that the Circuit Court erred in holding that it had no jurisdiction or authority to grant appellants' Motion to remand the case to the Commission. We have reached this conclusion against the strong protest of appellees.

It is appellees' contention that if the Circuit Court had any authority to remand to the Commission it must be found in Arkansas Statutes, Section 81-1325, and that no such authority is found in this section. The statute referred to, in all pertinent parts, reads as follows:

". . . The Court shall review only questions of law and may modify, reverse, remand for rehearing, or set aside the order or award, upon any of the following grounds, and no other:

1. That the Commission acted without or in excess of its powers.

2. That the order or award was procured by fraud.

3. That the facts found by the Commission do not support the order or award.

4. That there was not sufficient competent evidence in the record to warrant the making of the order or award."

In support of appellees' contention they cite the decisions in *Continental Casualty Co., et al* v. *Caldwell, et al,* 55 Ga. App. 17, 189 S. E. 408, *Gonzales* v. *Johnston Foil Manufacturing Co.,* Mo. Court of Appeals, 305 S. W. 2d 45. We find that the former citation is not entirely in

point and therefore not controlling and we are unwilling to follow the decision in the latter case.

In the *Caldwell* case the Motion to remand for the introduction of newly discovered evidence was first made in the appeals court, and no question of due diligence was involved. Also in that case it is not shown that the statutes involved were the same as our own statutes. Neither do we agree with that court in its overall understanding of the Workmen's Compensation Act as revealed by this statement: "The design of the Workmen's Compensation Act is to furnish a speedy, inexpensive, and final settlement of the claim of injured employees. The act abhors and shuns protracted and complicated litigation over the facts of any case. * * * For this reason the act makes the finding of the Industrial Commission upon the facts final and conclusive." Our own conception of the Workmen's Compensation Act is that it does not consider speed more important than justice.

The Missouri Court of Appeals in *Gonzales* case did construe a Workmen's Compensation Statute exactly like our own statute above quoted, and the opinion does clearly hold that the Circuit Court had no authority under the statute to grant a Motion to remand to the Commission to consider newly discovered evidence. We are unable however to agree with the reasoning upon which the court reached its conclusion. What appears to be the essence of the court's reasoning is stated as follows:

"There is nothing before us to indicate arbitrary action or abuse of discretion on the part of the Commission unless it can be said employee's so called Motion for Reconsideration and the exhibits attached thereto constitute a part of the record in the case. There is no provision in the Workmen's Compensation Act Authorizing the Commission to entertain such motion after final award. There is but one course to pursue after final award by the full Commission and that is to appeal to the Circuit Court. The Motion for Reconsider-

ation and the exhibits attached thereto were filed seven days after the Commission made its final award. Consequently it is our conclusion that such motion and exhibits were not properly a part of the record in the case and should not be so considered. The transcript as certified by the Commission to the Circuit Court did not include these documents, obviously, on the theory, and rightly so, that they constituted no part of the record. The Circuit Court should be confined to the transcript of the proceedings and the evidence as certified by the Commission when reviewing an award, absent the charge raised for the first time 'that the award was procured by fraud.' * * * And the court's action in permitting the introduction of employee's Motion for Reconsideration and the exhibits attached thereto as evidence on appeal was irregular and unwarranted." (*Lewis* v. *Kansas Explorations*, 238 Mo. App. 697, 187 S. W. 2d 524, loc. cit., 527)

"To permit the employee, or, for that matter, the employer and insurer, to bring in new evidence after a final award has been made by the Commission, would seriously interfere with the finality of the Workmen's Compensation proceedings. If such a course was permitted, claimant could await the Commission's decision and if it was adverse, then search for new evidence in an effort to set aside the Commission's Award."

It seems to us that the same process of reasoning would apply with equal force to a Motion in the Circuit Court in an ordinary civil or criminal action, yet nothing is more generally and uniformly recognized in our jurisprudence than the power and duty of a trial court to grant a new trial on newly discovered evidence (under proper conditions) in order to prevent a miscarriage of justice. The "proper conditions" referred to are, for example, that the movant has exercised due diligence, that the evidence is not cumulative, and that the new evidence would justify a different result. These "conditions" are, we think, sufficient safeguards against undue delays and connivance on the part of the claimant, the possibility of which apparently disturbed the Mis-

souri Court of Appeals. It is difficult to see why every reason which justifies new trial procedure in a Circuit Court does not apply with equal force and relevancy to the Workmen's Compensation Commission. It is noted from that portion of the *Gonzales* opinion copied above that even the Commission has no authority to reopen a case once it has reached a final decision. We can see no just and valid reason for us to reach such a conclusion, especially since our statute (Ark. Stats., § 81-1327) specifically provides that the Commission "shall not be bound by technical . . . rules of procedure."

There is another fundamental respect in which we disagree with the Missouri opinion mentioned above. It holds, and appellees here contend, that the Circuit Court has no authority to remand (in this kind of a situation) to the Commission because none of the 4 grounds set forth in the statutes are applicable—that is, there is no contention here that (1) the Commission acted in excess of its power, (2) any fraud was involved, (3) the facts do not support the order of the Commission, and (4) there is no lack of evidence to support the Commission's order. On the face of the statute that analysis appears to be sound but we think the significance of the key word in the statute has been overlooked. That word, "review", is found in the first line of the above quoted statute. If this was a situation where the Circuit Court was called upon to "review" the *record of the proceedings* of the Commission, then the 4 grounds mentioned above would be applicable. However, that is not the situation presented in this case. The Circuit Court was not called upon to "review" any *proceedings* of the Commission. It was called upon only to consider a Motion which constitutes no part of the proceedings before the Commission. It is our opinion therefore that in this situation the Circuit Court had the same authority to consider and act upon appellants' Motion that it always has to pass upon a like Motion in the usual civil or criminal case originating therein. Not only so, but in both instances the trial court's sound discretion should be based upon the same considerations, to-wit: Is the

900

newly discovered evidence relevant, is it cumulative, would it change the results, and was the movant diligent?

In view of the conclusions heretofore set forth, it follows that the entire cause should be, and it is hereby, remanded to the Circuit Court and the Circuit Court is reinvested with authority to consider appellants' Motion to remand to the Commission for the purpose of introducing newly discovered evidence. In considering the said Motion upon remand the Circuit Court will, of course, use its sound discretion in accordance with our pertinent statements in the previous paragraph.

Reversed and remanded with directions.