DEDNAM *v.* AMERICAN MACHINE & FOUNDRY CO.

5-2862                                          363 S. W. 2d 419

Opinion delivered January 7, 1963.

*Howell, Price & Worsham,* for appellant.

*Riddick Riffel,* for appellee.

CARLETON HARRIS, Chief Justice. This is a Workmen Compensation case. Herbert H. Dednam was employed by A. M. & F. Company from February, 1956, to September, 1957. He contends that he sustained temporary total disability in September, 1957, by reason of dermatitis, occasioned by his employment. Appellees take the position that the dermatitis was not the result of Dednam's employment. The claim was first heard before a referee in February, 1959, and a subsequent hearing was held in April of that year. Upon the referee finding for appellees, an appeal was taken to the full commission, at which time additional evidence was submitted. From an adverse ruling by the commission, appellant appealed to the circuit court, and thereafter filed a motion to remand the cause to the commission for further development of medical testimony, and to require the appellees to produce and make available certain chemical specimens and samples. The circuit court denied the motion to remand and entered its judgment affirming the decision of the

Workmen's Compensation Commission. From such judgment, comes this appeal.

Dednam testified (February, 1959) that when he commenced working for the company, his duties consisted of polishing and buffing metal, but he subsequently "worked on the acid chain and on the nickel plated chain." Part of the duties of the latter task consisted of placing rejected parts in a large vat of acid (which removed paint from the parts). He stated,

"Well, it had a strong smell to it, and when I first discovered that this, when it started taking effect on me it felt like a bunch of pins and things, everytime I was around these machines, like a bunch of pins and things, it would feel like it was sticking in my skin when I would start sweating."

Dednam testified that this only happened when he was around the acid;

"It formed just like heat would form on a person's body. And everytime I would sweat it would burn and swell up. * * * Well, it would swell up; my ankles and legs swoll up where I couldn't work."

Appellant first went to the company doctor (Dr. Hall) in August or September of 1956, and was later treated by Dr. J. A. Johnson. Dr. Johnson rendered a report on October 2, which he sent to the insurance carrier, stating,

"Patient has lesions on lower legs for past six weeks. Started out itching and now has a large number of lesions that look like an allergy. Not a permanent defect—Allergy."

According to Dednam, he received treatment from Dr. Johnson for about six months, and subsequently was referred by Dr. Hall to the Cazort-Johnston Allergy Clinic for allergic studies. Dr. Thomas G. Johnston of the clinic gave numerous patch tests, and on September 19, 1957, submitted a report, observing, *inter alia,* that the dietary history indicated certain foods caused asthma when Dednam was small, and stating in his report,

"His past history is quite significant in that he has had fall hay fever for the past seven to eight years. His hay fever, as he remembers it, starts in late August and lasts to October or middle November * * * In 1953, 1954, and 1955 he had hay fever from May until October.[1] He also had small bumps on his skin but they would tend to come and go and did not tend to form infected areas."

Dr. Johnston diagnosed appellant's condition as atopic dermatitis, adult form, severe. He stated,

"On examining his skin we found a tremendous amount of excoriated lesions with a purplish hue chiefly on his lower extremities. These did not have the characteristic appearance of a contact dermatitis, and would have been and are characteristic of the adult form of atopic dermatitis."

Included in the report were recommendations for treatment, including dietary suggestions. Dr. Johnston summarized his impressions, as follows:

"In our opinion this is not an occupational dermatitis. There is no question but that Mr. Dednam would have trouble, in our opinion, regardless of where he worked, unless he was able to spend 24 hours a day in an air conditioned place. He obviously would do much better out on the desert or on the sea as was the case while in the Navy. We have explained to him that with treatment it might be possible that he could live a comfortable life here in Little Rock, but the adult form of atopic dermatitis is extremely difficult to manage, and if there is the possibility of his obtaining a job elsewhere, he should make an attempt to do so. We do not feel that his employment has anything to do with the cause of his skin problem."

In conformity with the recommendation, Dednam went to California in October, and stayed in that state for approximately two and one-half months. According to his testimony, his condition (rash and swelling) re-

---

[1] Appellant denied that he told Dr. Johnston that he suffered from hay fever from May until October in the years mentioned or that he had told Dr. Johnston of dietary trouble with certain foods.

mained the same, and he only worked for about one week. He returned to Arkansas around the first of December, and testified that he had since been unable to resume any work[2], "no more than trying to pick up a little change here and there to take care of my family. * * * I helped my dad do a little carpenter work, and he helped me in that way, and he also helped support me and my family." Dednam was subsequently treated at the Veterans' Hospital by Dr. W. P. Scarlett, and was discharged by the hospital on June 26, 1958, with Dr. Scarlett making a final diagnosis of "atopic dermatitis, adult form, probably aggravated by chemicals, treated, improved."

Reona Dednam, wife of appellant, testified that her husband had not been bothered by any sort of allergy before he started working for A.M.F. Cycle Company.

In April, testimony was resumed before the referee. Frank Ford, a fellow employee, testified as to when Dednam's ailment commenced, and Nathaniel Dednam, a brother, verified the condition of appellant. Jerry Williams, job foreman, testified that appellant was never assigned to work at the vat regularly, but only worked in that capacity when the regular operator was absent, or was behind on the job. He stated positively that Dednam did not work at the vat as much as once a week during the period of his employment.

During the proceedings at the second hearing, the referee inquired if counsel would like to have the compounds, used in the tank, and around the buffing department, provided "so that some allergist can check them to see if the claimant is allergic to it, or if it could be, in his opinion, the cause of this dermatitis." Counsel for both sides agreed that this could be done. It was suggested that the chemical components and sample of "M-629" be obtained. However, no order was entered directing that samples be obtained, or requiring further tests to be made.

---

[2] At the time of the first hearing before the referee in February, 1959, appellant had resumed visits to Dr. Thomas Johnston for treatment.

Subsequently appellees' attorney advised by letter that Dr. Johnston has gone to the company plant, and made tests relative to the sulphuric acid. The letter further set forth that the substance, "M-629" was not used until July, 1957, which was, of course, nearly a year after appellant's complaint commenced. However, it was stated,

"If there is any rational reason why it is necessary to test this claimant with the M-629 substance, we would not object to doing so, but since it was not being used when the claimant first began having dermatitis I could see no useful purpose in this additional test."

Appellant made known his objection to Dr. Johnston's further testifying, unless the samples were furnished. Thereafter, on July 7, 1959, counsel for appellant directed a letter to the referee as follows:

"This will confirm our telephone conversation of yesterday in which I advised that inasmuch as the respondent has withdrawn its request for an additional hearing, the claimant also is willing for an opinion to be rendered on the evidence in the case as it now stands, and we do not desire additional hearing."

Following the referee's decision in behalf of appellees, the matter was appealed to the full commission where Herbert's father testified in support of his son's contentions, and a letter was offered by appellant from Dr. H. Ray Fulmer of Little Rock, wherein Dr. Fulmer agreed that the diagnosis of atopic dermatitis was correct. Pertinent portions read as follows:

"I do not feel that the man's occupation played any significant part in causing this trouble or in influencing its course. The only manner which I can conceive of his work influencing the dermatitis would be that any type of local irritant such as acids or acids fumes would aggravate any already existing dermatitis. Such aggravations, of course, would be primarily a subjective aggravation; i.e., it would produce more itching, stinging, etc. and such aggravation would be expected to cease when

the patient was no longer in contact with the irritating substance.''

Upon the commission affirming the referee, appellant appealed to the circuit court. Here, a motion to remand the cause to the commission for the consideration of newly discovered evidence, was filed. The motion alleged that the chemical components of the various solutions used by the company in its tanks and vats were unknown to appellant, were under the exclusive control and knowledge of the company, and the company had failed and refused to divulge the components of such solutions or to make same available for the purpose of allergy tests on Dednam. Attached to the motion was a statement from Dr. Calvin J. Dillaha, skin specialist of Little Rock, directed to appellant's counsel, as follows:

''I have recently spent some time reviewing the two briefs on Herbert Dednam and I am convinced if it is still possible to reopen his case, that we could demonstrate that his work was indeed a factor in the development of his cutaneous problem. I should be happy to discuss this with you or one of your associates at a convenient time. I feel with adequate preparation this could be presented to the commission or a court in such a fashion that it would be most convincing.''

The court was asked to remand the cause and to require the company ''to produce and make available to the claimant's physician and skin specialist'' samples of the solutions used by appellee in its plant during the period in question. The circuit court denied the motion, finding that appellant

''has failed to show that he exercised due diligence in the discovery of the evidence upon which he predicated his motion. He further failed to show that such evidence is not cumulative and that it would justify a different result than reached by the Commission without said evidence.''

The court then found that the decision of the Workmen's Compensation Commission denying compensation bene-

fits was supported by competent, substantial evidence, and affirmed the commission's decision.

For reversal, it is first argued by appellant that "the findings of the commission are not supported by the weight of evidence." Of course, we cannot concern ourselves with whether the commission's findings are supported by the *weight* of evidence, for compensation cases are not tried *de novo*. Rather, we examine the record with the view of determining whether there was substantial evidence to support the commission's findings. As herein set out, Dr. Thomas G. Johnston was of the opinion that Dednam's condition was not an occupational dermatitis, and he did not feel that the employment had anything to do with causing appellant's skin problem; in fact, he stated there was no question but that Dednam's trouble would have occurred, irrespective of where he worked "unless he was able to spend 24 hours a day in an air-conditioned place." It will be observed that Dr. Fulmer's report which was offered by appellant is far from positive; the doctor stated that any local irritant would aggravate the already existing dermatitis; however, he added that "such aggravation would be expected to cease when the patient was no longer in contact with the irritating substance. It is noticeable that Dednam's dermatitis *did not* cease when he left his employment; in fact, it continued during the period that he was in California and through the commission hearing, which was close to three years after the condition first appeared. At any rate, on the one hand, we have the positive testimony of Dr. Johnston, and, on the other hand, the statement of Dr. Fulmer, and a statement by Dr. Scarlett that the dermatitis was "probably aggravated by chemicals." We think, and particularly since his views are supported by the circumstances herein mentioned, that Dr. Johnston's findings and opinion constituted substantial evidence. Appellant complains that appellee failed to produce the samples of various chemicals involved, as per the arrangements made before the referee at the April, 1959, hearing, and argues that this failure to produce the evidence (which it had the power to produce), creates a

presumption that the evidence would be detrimental to appellees. The cases cited by appellant have no application to the fact situation herein, and as previously stated, we find no order requiring appellants to furnish these samples, nor any order directing further tests. The sulphuric acid test was made by Dr. Johnston, the doctor's findings being adverse to appellant's contention, and counsel for appellees reported that the M-629 was not in use when Dednam's skin trouble commenced. Be that as it may, appellant did not insist upon an order, or compliance with the agreement, but rather, through counsel, advised the referee that "the claimant also is willing for an opinion to be rendered on the evidence on the case as it now stands, and we do not desire additional hearing." Let it also be remembered that the discussion, relative to the obtaining of samples, took place before the referee ever rendered his decision, and no further effort was made between then and the time of the hearing by the commission (or at the time of the commission hearing) to obtain an appropriate order. We find no merit in appellant's first contention.

As to appellant's motion to remand to the commission, we think the court acted correctly in denying same. In *Mason* v. *Lauck*, 232 Ark. 891, 340 S. W. 2d 575, this court pointed out the conditions under which a circuit court could properly grant the relief herein sought. From the opinion,

"The 'proper conditions' referred to are, for example, that the movant has exercised due diligence, that the evidence is not cumulative, and that the new evidence would justify a different result."

The Pulaski Circuit Court, as reflected in its order, heretofore quoted, held that these conditions had not been met. We find no evidence in the record that would indicate this finding to be erroneous. Of course, as pointed out in the *Lauck* opinion, to permit the losing party to bring in new evidence after a final award by the commission (unless the proper conditions are present to justify a remand) would greatly hamper the finality of proceed-

ings before the compensation commission. In such event a "claimant could await the Commission's decision, and if it was adverse, then search for new evidence in an effort to set aside the Commission's Award."

The judgment of the Pulaski Circuit Court is affirmed.