OFFICE OF EMERGENCY SERVICES, State of
Arkansas, Division of Public Employee Claims *v.*
HOME INSURANCE COMPANY
Jerry CLANTON, Deceased, Employee
CITY OF PEA RIDGE, Employer

CA 80-541                                     618 S.W. 2d 573

Court of Appeals of Arkansas
Substituted Opinion on Denial of Rehearing
delivered July 1, 1981

*Jerry James*, for appellant.

*W. W. Bassett*, for appellee.

James R. Cooper, Judge. This is an appeal from a decision of the Workers' Compensation Commission which affirmed the Administrative Law Judge's determination that, at the time of his death, Jerry Clanton was acting as an employee of the Benton County Office of Emergency Services and that therefore the State of Arkansas was liable for Workers' Compensation benefits for his widow and two minor children.

On April 7, 1977, Mr. Clanton and Mr. Charles Hardy, Pea Ridge City Administrator, and also a volunteer fireman were contacted at the Pea Ridge City Hall by Sam Spivey, the Fire Chief, and told that water was needed to fight a grass or brush fire at a farm some 4 1/2 miles out of town. The owner of the farm was a subscriber to the volunteer fire department and paid a monthly fee on his city water bill as did other subscribers. Mr. Spivey testified that when he told Hardy and Clanton this Clanton volunteered to take the fire truck to the fire. Spivey gave him directions by walkie-talkie and when Clanton arrived at the fire he started the pump at the back of the truck. The truck began to roll down a hill, Clanton chased it, and he was crushed against a tree by the truck, sustaining injuries which caused his death two days later.

At the time of his death, Mr. Clanton was a full-time salaried employee of the City of Pea Ridge. He was also a member of the Pea Ridge Volunteer Fire Department, and

was a qualified and registered emergency services worker with the Benton County Office of Emergency Services.

The question before the Administrative Law Judge and the full Commission was whether the Office of Emergency Services, State of Arkansas, or the City of Pea Ridge and its carrier, Home Insurance Company, was liable for the payment of benefits to the surviving widow and two minor children.

The City of Pea Ridge, through Home Insurance Company (both appellees here), provides Workers' Compensation insurance for certain city employees. Volunteer firemen are not included. Arkansas Statute Annotated § 11-1955 (c) (Repl. 1976) provides as follows:

> For the purpose of Workmen's Compensation coverage in cases of injury or death of an individual, all duly registered and qualified emergency service volunteer workers shall be deemed State employees within the meaning and requirements of Act 462 of 1949 as amended by Act 373 of 1951 [§§ 13-1402 — 13-1407, 13-1409 — 13-1413] and shall receive compensation, and their survivors shall receive death benefits in like manner as regular State employees for injury or death arising out of and in the course of their activities as emergency services volunteer workers.

The City of Pea Ridge and Home Insurance denied coverage on the premise that Mr. Clanton's death arose out of and in the course of his duties as an emergency services worker, and therefore he was covered as a State employee. The State argued that Mr. Clanton's death arose out of and in the course of his duties as a full-time salaried employee of the City of Pea Ridge.

The Administrative Law Judge found that on April 7, 1977, the relationship of employer-employee existed between the deceased and the Benton County Office of Emergency Services and that his death arose out of and in the course of his duties as an emergency services worker. The

full Commission agreed with the Administrative Law Judge and affirmed his decision.

The State of Arkansas, through the Public Employees Claims Division, argues that the decision that at the time of his death Mr. Clanton was acting as an emergency services worker is not supported by substantial evidence. Appellant further argues that the evidence is clear that Mr. Clanton's activities at his death were a function of a department of the City of Pea Ridge.

On appeal we must view the evidence in the light most favorable to the Commission's decision and uphold that decision if supported by substantial evidence. *Warwick Electronics* v. *Devazier*, 253 Ark. 1100, 490 S.W. 2d 792 (1973). Before we may reverse a decision of the Commission, we must be convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *Bunny Bread* v. *Shipman*, 267 Ark. 926, 591 S.W. 2d 692 (Ark. App. 1980).

In this case Mr. Clanton had several jobs with different supervisors. He was an employee of the Pea Ridge Water, Street and Sewer Department, but was on call 24 hours a day to do whatever was needed to be done for the city. He was a volunteer fireman, serving under Mr. Spivey, the volunteer fire chief. He was also a member of the Benton County Office of Emergency Services under the direction of Mr. True, County Director.

At the time of his death, Mr. Clanton was four and one-half miles out of Pea Ridge, on the land of Mr. Webb, a subscriber to the Pea Ridge Fire Service, in possession of a fire truck owned by the City of Pea Ridge. he was there in response to a request by Mr. Spivey, the fire chief. No person with supervisory authority over him was present. Mr. Clanton turned on the pump to supply water to the firefighters, and was injured moments later when he tried to stop the runaway fire truck. Mr. Clanton died two days later from these injuries.

In *Southern Farm Bureau Cas. Co.* v. *Tuggle*, 270 Ark. 106, 603 S.W. 2d 452 (Ark. App. 1980), this Court outlined several factors to be considered in determining whether an employer-employee relationship exists:

> (1) the right to terminate employment before the job is finished;
> (2) the amount of compensation being calculated on a time basis;
> (3) which party furnished materials and equipment;
> (4) and the employer's ability to exercise some degree of control of the manner of doing the work.

Both parties agree that these factors provide the answer to the issue in this case, although they obviously disagree as to what the answer is. In the normal case where the question arises as to the existence of the employer-employee relationship, the four factors enumerated would be helpful. Here, however, neither party denies the existence of the relationship with *some* employer — they disagree as to which employer.

At the time of his death, Mr. Clanton could have been fired by the city, relieved as a volunteer fireman, or taken off the list of emergency services workers, with each action being taken by a different supervisor.

His pay was not calculated on a time basis, but he could have drawn $3.00 per run if he went to the site as a volunteer fireman. He was paid a monthly salary by the City of Pea Ridge.

The fire truck belonged to the City of Pea Ridge, but was used by the volunteer fire department under the direction of the fire chief, who was also a volunteer.

As to control, we note that his immediate supervisor in the water, sewer and street department, the mayor, city manager, or fire chief could have exercised control over him at the time of his death had they been present. Likewise, had the director of emergency services been present, he could have exercised a degree of control over Clanton.

In short, consideration of these four factors in light of the facts of this case is not very helpful.

The Emergency Services Act, Ark. Stat. Ann. § 11-1936(a) (Repl. 1976) defines emergency services as:

> ... the preparation for and carrying out of all emergency functions, by existing State and local governments other than functions for which military forces are primarily responsible, to prevent, minimize and repair injury and damage resulting from disasters caused by enemy attack, natural causes, man-made catastrophes or civil disturbances. ...

Subsection (b) of the same act provides:

> "Disaster" means any tornado, storm, flood, high water, earthquake, drought, fire, radiological incident, air or surface borne toxic or other hazardous material contamination, or other catastrophe, whether caused by natural forces, enemy attack or any other means, occurring anywhere in the State, which, in the determination of the Governor, is or threatens to be of sufficient severity and magnitude to warrant State action or to require assistance by the State to supplement the efforts and available resources of local governments and relief organizations in alleviating the damage, loss, hardship or suffering caused thereby, ....

As mentioned earlier, the Act provides workers' compensation coverage as State employees for emergency service workers injured or killed in the performance of emergency service duties. The Commission decided that Mr. Clanton's death was the result of and in the course of his employment as such a worker. After analyzing the facts, and the Act, we conclude that there is no substantial evidence in the record to support this finding by the Commission. We reach this result for two reasons.

First, Mr. Clanton's activities prior to his death did not involve a response to directions from the emergency services director; there had been no disaster declared, and, in fact,

there was no disaster or catastrophe as contemplated by the Emergency Services Act. We recognize that firefighting is specifically included in the list of functions which are designated as emergency services, but from a reading of the Act it is clear that this type fire was not the type contemplated by the Act. The testimony revealed the fire to have been a small grass or brush fire, covering two or three acres. There was no testimony indicating that it threatened lives or substantial property. The fire could have become such a threat, and possibly could have eventually reached the level of a "catastrophe" or "disaster" but it had not done so at the time of the accident. We do not believe that the Legislature intended, by the inclusion of "firefighting" in the list of emergency services, to make every fire, of whatever size, intensity, and location, a "disaster" under the Emergency Services Act.

Second, at the time of his death, Mr. Clanton was not involved in firefighting, either as an emergency services worker or as a member of the Pea Ridge Volunteer Fire Department. He was present at the fire, during normal working hours for the city, following a request by the volunteer fire chief, made in the presence of the City Administrator. He was killed while trying to preserve the city-owned equipment from damage. The Arkansas Supreme Court, in *Parrish Esso Service Center* v. *Adams*, 237 Ark. 560, 374 S.W. 2d 468 (1964), recognized that the protection of the employer's property was a legitimate duty of an employee. In that case, the employer went outside his employer's service station to secure some property during a storm, and he was injured when a gust of wind blew him into the air, carrying him some seventy-five feet before dropping him on the concrete. In that case, the Court stated:

> ... Certainly, there was a duty upon Adams, as an employee, to protect the property of his employer, and the protection that Adams was seeking to afford, could not have been done without leaving the building. The acts being performed were as much a part of his duties as though he had been waiting on a customer when the wind struck.

In *Bell* v. *Lindsey Wilson College*, 490 S.W. 2d 145 (Ky. 1973), the Kentucky Court of Appeals held that injury or death resulting from an effort by an employee to save or protect the employer's property arises out of and in the course of his employment. In that case, the employee was working as a truck driver for a college. He was directed to take the college-owned truck with a load of college-owned lumber to the college president's farm and store it in a barn on the land. The employee lived on the farm and share-cropped. While burning off a field, an activity which was personal to him, the fire spread and engulfed the barn. The employee got the keys to the truck and attempted to save it. He was killed trying to remove the truck from the barn. The Court found that his death arose out of and in the course of his employment with the college, and referred to Larson, Workmen's Compensation Law, Vol. I, § 28.11, p. 452.71, which states:

> Under familiar doctrines in the law relating to emergencies generally, the scope of an employee's employment is impliedly extended in an emergency to include the performance of any act designed to save life or property in which the employer has an interest. . . . It is too obvious for discussion that emergency efforts to save the employer's property from fire, theft, runaway horses, destruction by strikers, or other hazards are within the course of employment.

Ordinarily, our procedure would be to remand the case to the Commission for a determination as to whether Mr. Clanton was acting as an employee of the City or of the volunteer fire department, but in this case the Commission could make only one finding — that Mr. Clanton was protecting the property of his employer at the time of his death. Therefore, the case is reversed and remanded to the Commission with directions to enter an order holding the City of Pea Ridge and its carrier, Home Insurance Company, liable for the payment of workers' compensation benefits to Mr. Clanton's widow and children in the manner prescribed by law. See *Doyle's Concrete Finishers* v. *Moppin*, 268 Ark. 167, 594 S.W. 2d 243 (1980).

One other point was raised by appellee and must be dealt with. Appellee argues that, since Mr. Clanton was a municipal employee, the action of the Commission is not subject to judicial review under the provisions of Ark. Stat. Ann. § 81-1351 (Repl. 1976) as it existed at the time the claim was filed. That statute did provide that the action of the Commission with respect to a claim by an employee of a municipality was final and not subject to judicial review. The Legislature amended the statute by Act 597 of 1979 and deleted the section prohibiting judicial review in such cases. This claim was filed in 1977, and the Commission issued its opinion in October of 1980. Appellee urges that this modification of the statute affects substantial rather than procedural rights, and that a judicial review would violate the prohibition against such changes in substantial rights found in Ark. Stat. Ann. § 1-104 (Repl. 1976). We disagree. Appellee has cited us to no authority supporting the contention that this change affects substantial rights, and we do not think that it does. The change was a procedural one affecting the manner in which one could enforce the substantive rights conferred on claimants and employers under the Workers' Compensation Act.

Reversed and remanded.

MAYFIELD, C.J., would reverse and remand for the Commission to determine whether Mr. Clanton was an employee of the city or the volunteer fire department.