MARION HOSPITAL ASSOCIATION *v.* Mary
LANPHIER

CA 84-254                                          688 S.W.2d 322

Court of Appeals of Arkansas
Division II
Opinion delivered May 1, 1985

*Smith & Kelly,* by: *Michael E. Kelly,* for appellant.

*Donald J. Adams,* for appellee Marion County Board of Governors.

*Frederick S. "Rick" Spencer,* for appellee Lanphier.

DONALD L. CORBIN, Judge. This is an appeal from a decision of the Arkansas Workers' Compensation Commission ruling that appellant, Marion Hospital Association, was not immune from liability to appellee, Mary Lanphier, for Workers' Compensation benefits.

The main issue in this case is whether the Commission's decision that appellant failed to sustain its burden of proof that it was an institution maintained and operated wholly as a public charity so as to come within one of the enumerated exceptions to employment contained in Ark. Stat. Ann. § 81-1302(c)(1) (Repl. 1976), is supported by substantial evidence. We reverse and remand.

Since Arkansas has no case law construing Ark. Stat. Ann. § 81-1302(c)(1), we will examine cases which defined charitable institutions for purposes of taxation or tort immunity for guidance. In *Williams* v. *Jefferson Hospital Ass'n.*, 246 Ark. 1231, 442 S.W.2d 243 (1969), summary judgment was granted in favor of Jefferson Hospital Association on the basis of the doctrine that charitable institutions were immune from tort liability. Williams had brought a tort action against Jefferson Hospital Association and two doctors alleging their negligence in abandoning him after assuming professional responsibility for his treatment. Williams did not controvert the finding that Jefferson Hospital fell into the category of charitable institutions, but argued instead that Arkansas' doctrine of charitable immunity from tort should be abolished. Citing numerous reasons for not abandoning this doctrine, the Court affirmed the trial court's order finding Jefferson Hospital to be a charitable institution. In its discussion the Court reviewed previous cases and stated as follows:

> Appellant argues that the harshness of the doctrine requires its abandonment. Concededly that attack would be more persuasive if our court applied the doctrine in a broad and liberal manner, as has been true in some jurisdictions. Our court has in fact given the term 'charitable immunity' a rather narrow construction. 'A hospital * * * *free to all who are not pecuniarily able*, and supported partly by private contributions and partly by fees from patients, but producing no profit, is a purely public charity.' (Italics supplied.) That statement is found in the early case of *Hot Springs School Dist.* v. *Sisters of Mercy*, 84 Ark. 497, 106 S.W. 954 (1907). In *Crossett Health Center* v. *Croswell*, 221 Ark. 874, 256 S.W.2d 548 (1953), reference was made to those agencies, including hospitals, entitled to the immunity and they were described as created and maintained *exclusively for charity*. (Italics supplied.) In that case the hospital was found to fall short of 'purely benevo-

lent and charitable purposes essential to clothe its property with trust attributes.' A tort judgment was affirmed. In *Helton* v. *Sisters of Mercy*, 234 Ark. 76, 351 S.W.2d 129 (1961), we discussed the many factors which led to the conclusion that the hospital was a public charity. Those were the articles of incorporation; that exemption from all forms of taxes, the free labor of the Sisters; and 'its doors are always open to anyone, regardless of creed, needing hospitalization' irrespective of ability to pay . . .

In *Burgess, Judge* v. *Four States Mem. Hosp.*, 250 Ark. 485, 465 S.W.2d 693 (1971), the Arkansas Supreme Court stated that since all moneys received by Four States Memorial Hospital were expended for its maintenance and improvement, the hospital was within the scope of the constitutional exemption from taxation.

In its decision holding that appellant was not within the exception to employment contained in Ark. Stat. Ann. § 81-1302(c)(1), the Commission listed the following factors it believed should be followed in determining whether or not a particular hospital is an institution "maintained and operated wholly as" a public charity:

(1) Do the articles of incorporation provide that the purpose of the hospital is charitable in nature?

(2) Is the corporation maintained for the private gain, profit or advantage of its organizers, officers or owners either directly or indirectly?

(3) Does the hospital have capital stock or does it have provisions for distributing dividends or making a profit?

(4) Does the hospital derive its funds from public and private charity as well as those who are able to pay?

(5) Do all 'profits' go toward maintaining the hospital and extending and enlarging its charity?

(6) Is the hospital open to all who are not pecuniarily able?

(7) Are those patients who are unable to pay received into the hospital without charge, without discrimination on account of race, creed or color and are they given the same care as those who are able to pay?

(8) Is the hospital exempt from the payment of both state and federal taxes?

The Commission found that appellant met all of the above enumerated factors with the exception of part of (7) which provides that non-paying patients must be given the same care as those who are able to pay. The Commission concluded that "Although we feel that the Association was intended to be a charitable hospital, we do not feel they sustained their burden of proving that the hospital was, in fact, operated and maintained as a wholly charitable hospital." This conclusion was based in large part upon the testimony of Helen Paxton, a patient of the hospital over a five-year period. Helen Paxton testified that she felt that as long as her insurance and Medicaid benefits paid bills she incurred while a patient in the hospital, she was provided adequate care. However, she stated that after her insurance and Medicaid benefits ran out, the hospital's attitude towards her changed. Helen Paxton testified that the nurses would not come as often when she called for them. During one of her hospitalizations, she stated that she received a letter from a collection agency in Tulsa, Oklahoma, informing her they were going to take her home away from her. Objection to this testimony was sustained by the administrative law judge. She testified further that she received a visit from a woman who worked in the office of the hospital informing her that all of her back bills had to be paid and that she would have to leave the hospital the following day. Helen Paxton stated she called her husband who contacted their attorney. She testified that their attorney talked to the administrator of the hospital who later visited Helen Paxton in her room. He informed her that she had a very large bill and that they would have to work something out. She told him she would just have to go home and the administrator informed her that he would not make her go home. She also stated that the administrator told her that she was not going to get good treatment in the hospital. Helen Paxton testified that night she was refused pain medication. She also testified to another incident while a patient in the hospital where she could not get assistance from the nursing staff after she had vomited and defecated in her bed during the night shift.

The Commission stated that the above testimony by Helen Paxton was evidence that appellant did not treat all of its non-paying patients as it would its paying patients and that appellant placed undue pressure on those who did not pay their bills. Although Helen Paxton was never denied admittance by appellant and was eventually relieved of her obligation to pay her bill,

the Commission stated that appellant was less than charitable on occasions.

■■■ A decision of the Workers' Compensation Commission will be affirmed if there is any substantial evidence to support it. *Chism* v. *Jones*, 9 Ark. App. 268, 658 S.W.2d 417 (1983). Before a decision of the Commission may be reversed on appeal by this Court, it must appear that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *Office of Emergency Services* v. *Home Ins. Co.*, 2 Ark. App. 185, 618 S.W.2d 573 (1981). We cannot say that the decision reached by the Commission in the case at bar is supported by substantial evidence.

We believe appellant established a prima facie case of exemption under Ark. Stat. Ann. § 81-1302(c)(1). The Commission relied heavily upon the testimony of one witness in its decision although it acknowledged that Helen Paxton was never denied admission to the hospital and her bill of approximately $23,000 was forgiven by appellant. While she may have been treated rudely, there was no showing that it was done under the authority of appellant nor that it was anything more than an isolated event.

The record reflects that Marion County Hospital facility was built in the 1950's with a Hill-Burton Grant and county funding and managed by the Marion County Hospital Board of Governors. In June 1978 the Board of Governors leased the county facility to appellant Marion Hospital Association which was a non-profit corporation under the laws of Arkansas. It was exempt from state and federal income taxes and was operated so that no part of any income or receipts would be distributed to the incorporators or officers. Any income was used exclusively for payment of costs and maintenance. Officers of the association testified that it operated with an open door policy refusing services to no person because of inability to pay. The association was bound by Hill-Burton regulations concerning indigent care. A management services agreement was entered into in September 1978 between Marion Hospital Association and Hospital Management Associates, Inc., a Kentucky corporation. Don Regnier, chairman of the Board of Directors of the association, testified that the Board instructed the administrator to not refuse services to anyone. He also stated that compliance with the

policies of the hospital concerning Hill-Burton money and government regulations in the grant were made clear to Hospital Management Associates and there was a requirement that they be complied with. David Doshier, vice-president of the association, testified that gross patient revenue was $1,609,522 from July 10, 1978, until July 16, 1980. He stated that 68% to 75% of that amount was Medicare and $334,022 was uncollectible. He stated further that Hospital Management Associates told the association that it should set up a rule that admittance would be contingent upon a patient's ability to pay, but that the association refused to do so. He was not aware of an association policy requiring cash only in the emergency room.

In view of the above testimony as well as appellant's articles of incorporation, we cannot say that fair-minded persons with the same facts before them could reach the conclusion that appellant failed to sustain its burden of proving that it was an institution maintained and operated wholly as a public charity so as to come within the exception contained in Ark. Stat. Ann. § 81-1302(c)(1). Accordingly, we reverse and remand with directions to the Commission to enter an order dismissing the claim.

Reversed and remanded.

CRACRAFT, C.J., and GLAZE, J., agree.