ROBERTS-McNUTT, INC. *v.* Michael J. WILLIAMS

CA 85-40                                    691 S.W.2d 887

Court of Appeals of Arkansas
En Banc
Opinion delivered June 26, 1985

*Friday, Eldredge & Clark*, by: *William M. Griffin, III*, for appellant.

*Laws & Swain, P.A.*, by: *Timothy W. Murdoch*, for appellee.

JAMES R. COOPER, Judge. In this workers' compensation case, the Commission adopted the administrative law judge's opinion and found the appellant entitled to receive benefits. From that decision, comes this appeal.

On November 3, 1982, while employed by Western Waterproofing in Oklahoma, the appellee suffered a compensable back injury. On January 17, 1983, Dr. Warren G. Low performed a lumbar laminectomy at L3/4, excising the disc and exploring the L5/S1. On April 4, 1983, Dr. Low released the appellee, assessing his permanent partial disability at 20% to the body as a whole. Dr. Low noted that there was no evidence of disc space infection or other abnormalities. Western Waterproofing paid the appellee $18,000.00 compensation for his permanent partial disability.

Shortly after he was released by Dr. Low, the appellee applied for a job with the appellant. On his job application, dated April 18, 1983, the appellee stated that he had no prior physical conditions which might limit his ability to work. The appellee and one of his witnesses, Freddy Scott, testified that the appellee told Raymond Roberts, president of the appellant corporation, about the prior back condition and that Roberts instructed the appellee not to include that information on his application, as it would increase the company's insurance rates. Roberts testified that he did not tell the appellee to conceal his prior injury, and that he did not know of the prior injury until the appellee injured his back while working for the appellant.

The appellee began work for the appellant on either May 2, 1983, or May 3, 1983, and, after working one full day, slipped and fell while attempting to move a 300 pound scaffold on wet ground, injuring his back. The appellee was treated for this injury by Dr. William Blankenship. Initially, Dr. Blankenship diagnosed the appellee's injury as an acute strain to the lumbar spine. He further noted that the appellee, by history, had previously injured his back, with pain primarily in his right side and leg, but that he

had been pain-free for the two months prior to the May, 1983, injury. Dr. Blankenship noted that the May, 1983, injury resulted in pain in the left side and leg (later spreading to both legs). On September 9, 1983, Dr. Blankenship stated in a letter that, after comparing the myelograms from the earlier injury, it was his opinion that the appellee was suffering from a continuation of his original injury.

The appellant initially accepted the claim as compensable, paying medical and temporary total disability benefits. Now the appellant fully controverts the claim. The Commission, without discussion, found that the May, 1983, injury was an aggravation of the preexisting injury or a new injury, thus rendering the appellant liable for the benefits. Furthermore, the Commission, finding the testimony of Scott and the appellee to be the more credible, held that the appellant was estopped from raising the defense of misrepresentation.

At the hearing before the Commission, the appellant requested permission to introduce as additional evidence a medical report prepared by a Dr. Metcalf on April 5, 1983, and a copy of a joint petition settlement agreement between the appellee and Western Waterproofing. Both of these documents relate to the earlier injury. Dr. Metcalf's report rated the appellant's permanent partial disability at 40.5% to the body as a whole (20.5% for physical limitation and 20% for pain). The joint petition agreement, dated April 21, 1983, states that the appellee was 27% disabled. The appellant, in seeking to have these documents introduced into evidence, stated that, despite its ongoing investigation, the documents had just been discovered. The Commission, noting that the administrative law judge had reserved the question of permanent disability for future determination, held the appellant had failed to show that the documents were relevant, were not cumulative, or were of a nature likely to change the result in the case. The Commission observed that the appellant was not precluded from offering the documents during further proceedings to determine permanent disability.

The appellant first contends that the Commission erred in holding that the appellant was estopped from raising the defense of misrepresentation on the employment application. Under the test set forth in *Shippers Transport of Georgia* v.

*Stepp*, 265 Ark. 365, 578 S.W.2d 232 (1979), the employer must show three things in order to successfully raise the defense of misrepresentation on an employment application:

> (1) The employee must have knowingly and willfully made a false representation as to his physical condition. (2) The employer must have relied upon the false representation and this reliance must have been a substantial factor in the hiring. (3) There must have been a causal connection between the false representation and the injury.

265 Ark. at 369 (quoting 1B A. Larson, *Workmen's Compensation Law*, Section 47.53). All these factors must be present in order to claim the defense. *Id.* The appellee's testimony, corroborated by that of Scott, was that the appellant knew of the prior injury and instructed the appellee not to include that information on his application. Questions of credibility and the weight to be given the evidence are exclusively within the province of the Commission. *Morrow* v. *Mulberry Lumber Co.*, 5 Ark. App. 260, 635 S.W.2d 283 (1982). The reviewing court may not displace the Commission's choice between two fairly conflicting views even though, if it were reviewing the matter *de novo*, the court might have made a different decision. *De Francisco* v. *Arkansas Kraft Corporation*, 5 Ark. App. 195, 636 S.W.2d 291 (1982). Here the Commission chose to believe the testimony of Scott and the appellee over that of Roberts. We cannot say that the Commission erred in so doing. We find that this evidence constitutes substantial evidence, supporting the Commission's decision that the appellant was estopped from asserting the *Shippers* defense. The appellant could not have relied on the misrepresentation when it knew the true facts before the appellee was hired.

■ The appellant next contends that there is no substantial evidence to support the Commission's finding that the May, 1983, injury was either a new injury or an aggravation, rather than a recurrence, of the prior injury. If the second injury is a recurrence of the first, the employer at the time of the first injury is liable. *Moss* v. *El Dorado Drilling Co.*, 237 Ark. 80, 371 S.W.2d 528 (1963). If, however, an intervening cause, such as a second accidental injury, aggravates the original injury, then the employer at the time of the second injury is responsible for the

consequences of that second injury. *Bearden Lumber Co.* v. *Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). "[I]n all our cases the test was and is the same: Is the second episode a natural and probable result of the first injury or was it precipitated by an independent intervening cause?" 7 Ark. App. at 72.

In the case at bar, Dr. Low's report of April 4, 1983, releasing the appellee for work, indicated that no disc space infections or other abnormalities existed. It is undisputed that the second injury occurred immediately after the appellee slipped while attempting to move a 300 pound scaffold on wet ground. Although Dr. Blankenship's September 9, 1983, letter states that the May, 1983, injury was a continuation and recurrence of the previous injury, his May 3, 1983, letter stated that the appellee had suffered an acute lumbar strain. As noted earlier in this opinion, the weight to be given these reports is the province of the Commission, not this Court. *Morrow, supra.* It is the Commission's responsibility, as the fact finder, to reconcile any conflicts in the evidence. *City of Magnolia* v. *Caswell*, 269 Ark. 708, 600 S.W.2d 32 (Ark. App. 1980). There is substantial evidence which supports the Commission's finding that the May, 1983, injury was either an aggravation of the earlier injury or a new injury. Therefore, even though the evidence might support the opposite result, we must affirm.

The appellant's final point concerns the Commission's right to remand a case to the administrative law judge for the taking of additional evidence under Ark. Stat. Ann. Section 81-1327 (c) (Supp. 1983). The appellant contends that the Commission abused its discretion in denying its motion for the submission of additional evidence. In *Nicholas* v. *Hempstead County Memorial Hospital*, 9 Ark. App. 261, 658 S.W.2d 408 (1983), we stated:

> Clearly the Commission is vested with discretion in determining whether and under what circumstances a case appealed to them should be remanded for the taking of additional evidence. *On appeal an exercise of that discretion will not be lightly disturbed.*

9 Ark. App. at 267. (quoting *Haygood* v. *Belcher*, 5 Ark. App. 127, 633 S.W.2d 391 (1982).) A case should only be remanded if the newly discovered evidence is relevant, is not merely cumula-

tive, would change the result, and was diligently discovered and produced by the movant. *Mason* v. *Lauck*, 232 Ark. 891, 340 S.W.2d 575 (1960); *Hill* v. *White-Rodgers*, 10 Ark. App. 402, 665 S.W.2d 292 (1984); *Haygood* 5 Ark. App. at 133. The Commission found that the appellant failed to meet these criteria, and since we find no abuse of the Commission's discretion, we affirm on this point.

▮ The newly discovered evidence is non-cumulative only to the extent it establishes a different degree of permanent disability than that established by the evidence previously considered. The remainder of the evidence is cumulative, as it merely affirms Drs. Low and Blankenship's records, indicating the location of the injury, the pain suffered by the appellee, and that the previous claim had been settled. In the case at bar, the degree of permanent disability apportionable between the employers is not an issue, since that question was specifically reserved for future proceedings. The Commission correctly noted that this evidence may be offered on the permanent disability question at a later date.

Affirmed. ·

CLONINGER, CORBIN, and GLAZE, JJ., dissent.

DONALD L. CORBIN, Judge, dissenting. I have no choice but to dissent. The rule is long-standing that "before a decision of the Commission may be reversed on appeal, it must appear that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission." *Office of Emergency Services* v. *Home Ins. Co.*, 2 Ark. App. 185, 618 S.W.2d 573 (1981). Upon review we must view the evidence in the light most favorable to the Commission's decision and uphold that decision if supported by substantial evidence. *See, Office of Emergency Services, supra.* I fail to see how the Commission, whom I know to be fair-minded persons, could have reached the conclusion they did on the facts of this case. While it is well settled that questions of credibility are for the Commission to determine, I cannot affirm a decision that is based on so clear a falsehood. There is simply no substantial evidence to support the appellee's version of the facts.

The appellant in this instance should have prevailed in

reliance upon *Shippers Transport of Georgia* v. *Stepp*, 265 Ark. 365, 578 S.W.2d 232 (1979). The appellee testified along with his witness that Raymond Roberts, appellant's president, instructed appellee to put down on his employment application that he had suffered no prior injuries because it would cause the company's insurance rates to go up. The evidence was uncontradicted that the appellant was self-insured. I would have to defer to the Commission's decision had the appellant in this case not been self-insured but as it was, there was no conceivable reason for Raymond Roberts to have told the appellee to falsify his application. There was no insurance for which rates could have been raised. Raymond Roberts' Company would have had to bear the cost of any injury suffered by the appellee. Mr. Roberts further testified that the job demands upon the appellee were very physical and he would have hesitated to hire him had he been aware of his back problems. Also consider that appellee had just received an $18,000 compensation award in Oklahoma in April 1983, yet ten days later applied for the job with appellant, went to work on May 2 or 3, and suffered an injury the following day. These facts support the total inconsistency of appellee's story. It is obvious that appellee and his witness were lying.

Further, I would reverse on the second issue because there is no substantial evidence to support an award on the basis of an aggravation of appellee's prior injury.

Appellee settled his Oklahoma workers' compensation claim in mid-April of 1983 for $18,000. Thereafter, on April 18, 1983, appellee applied for a job with Roberts-McNutt. He began work on May 2 or 3, 1983, and was allegedly injured the next day, within a month after his release with the exact same injury and a 20% disability rating. Moreover, the injury with Roberts-Mc-Nutt occurred within three months of his extensive back surgery. Dr. Blankenship's records indicate that exactly the same areas were involved in the prior injury and the later injury. Dr. Low's records verify this fact. Moreover, Dr. Blankenship reviewed Dr. Low's records and tests and compared them with those done in Little Rock and stated that this injury was a recurrence of the prior injury. Appellee testified that the pain which he experienced after the second injury was the same as he experienced after the first injury in Oklahoma. Appellee had continuing symptoms between his release and his alleged second injury as noted in Dr.

Low's report of April 4, 1983. Appellee presented no medical testimony that this was an aggravation of a prior injury. Rather, the sole medical evidence on this point was that it was a recurrence of the prior injury.

In light of the extensive surgery performed within months preceding the second injury and that appellee was given a 20% disability rating because of the exact same problem within three and one-half weeks of his second injury, there can be no question but that this is a recurrence of the prior injury.

I would unhesitatingly reverse this case.